**Case No. 21-1284**

# In the United States Court of Appeals
# For the Tenth Circuit

MICHAELLA LYNN SURAT,

*Plaintiff-Appellee,*

v.

RANDALL KLAMSER, in his individual capacity

*Defendant-Appellant,*

and

CITY OF FORT COLLINS, a municipality

*Defendant.*

On Appeal from the United States District Court for the District of Colorado
The Honorable William J. Martinez, District Court Civil Action No. 19-cv-00901

**RESPONSE BRIEF OF PLAINTIFF-APPELLEE**

DAVID A. LANE
ANDREW MCNULTY
CATHERINE E. ORDOÑEZ
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400, Denver, CO 80202
(303) 571-1000 | (303) 571-1001 fax
*Attorneys for Plaintiff-Appellee*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iv

STATEMENT OF RELATED CASES .......... 1

I. JURISDICTIONAL STATEMENT .......... 1

II. ISSUES PRESENTED FOR REVIEW .......... 2

III. STATEMENT OF THE CASE .......... 2

A. Defendant Klamser used excessive force in effecting a lawful arrest of Ms. Surat .......... 2

B. Plaintiff initiated the instant civil rights action .......... 5

IV. SUMMARY OF ARGUMENT .......... 7

V. ARGUMENT .......... 8

A. Standard of Review .......... 8

B. Defendant's attacks on the district court's factual conclusions are beyond this Court's jurisdiction on interlocutory appeal .......... 9

C. The district court did not err in concluding that a reasonable jury could find Defendant Klamser violated Ms. Surat's constitutional rights .......... 14

D. Defendant's attacks on the district court's *Heck* determinations are beyond this Court's jurisdiction on interlocutory appeal .......... 18

E. The district court did not err under *Heck* in denying Defendant Klamser summary judgment .......... 20

F. The district court did not err in concluding that the law was clearly established .......... 28

VI. CONCLUSION .......... 39

VII. STATEMENT REGARDING ORAL ARGUMENT .......... 40

CERTIFICATE OF COMPLIANCE ..........

CERTIFICATE OF DIGITAL SUBMISSION ..........

CERTIFICATE OF SERVICE ..........

# TABLE OF AUTHORITIES


CASES Page

*Behrens v. Pelletier*,
516 U.S. 299, 313 (1996) ....................1, 8

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007)....................39

*Bridges v. Yeager*,
352 F. App'x 255, 258 (10th Cir. 2009) ....................8, 14, 18

*Browder v. City of Albuquerque*,
787 F.3d 1076, 1082 (10th Cir. 2015)....................30

*Butler v. City of Norman*,
992 F.2d 1053, 1055 (10th Cir. 1993)....................16

*Casey v. City of Fed. Heights*,
509 F.3d 1278, 1281 (10th Cir. 2007)....................16, 30, 31, 32

*Colbruno v. Kessler*,
928 F.3d 1155, 1165 (10th Cir. 2019)....................30

*Cook v. Peters*,
604 F. App'x 663, 664-65 (10th Cir. 2015) ....................18, 32, 35, 38

*Cortez v. McCauley*,
478 F.3d 1108, 1114-15 (10th Cir. 2007) ....................29

*Currier v. Doran*,
242 F.3d 905, 923 (10th Cir. 2001)....................30

*Crowson v. Wash. Cty.*,
983 F.3d 1166, 1177 (10th. Cir. 2020)....................14

*Davis v. Clifford*,
825 F.3d 1131, 1134 (10th Cir. 2016)....................15, 37

*Estate of Jensen v. Clyde*,
989 F.3d 848, 854-55 (10th Cir. 2021) ....................................................14

*Foote v. Spiegel*,
118 F.3d 1416, 1422 (10th Cir. 1997)........................................................2

*Fancher v. Barrientos*,
723 F.3d 1191, 1199 (10th Cir. 2013)..............................................9, 13, 28

*Graham v. Connor*,
490 U.S. 386, 397 (1989) ........................................................... *passim*

*Havens v. Johnson*,
783 F.3d 776, 781 (10th Cir. 2015)...................................................16, 20

*Heck v. Humphrey*,
512 US 477 (1994) .................................................................*passim*

*Hope v. Pelzer*,
536 U.S. 730, 741 (2002) ..............................................................30

*Johnson v. Jones*,
515 U.S. 304, 313 (1995) ...........................................................1, 8

*Long v. Fulmer*,
545 F. App'x 757, 759-60 (10th Cir. 2013) ...........................18, 33, 34, 37

*Lowe v. Raemisch*,
864 F.3d 1205, 1210-11 (10th Cir. 2017) ..............................................30

*Martinez v. City of Albuquerque*,
184 F.3d 1123 (10th Cir. 1999)...............................................*passim*

*Morris v. Noe*,
672 F.3d 1185, 1189-90 (10th Cir. 2012) ..........................................*passim*

*Nelson v. Jashurek*,
109 F.3d 142 (3d Cir. 1997)..........................................................26, 27

*Olsen v. Layton Hills Mall*,
312 F.3d 1304, 1313 (10th Cir. 2002).....8, 14

*Patel v. City of Madison*,
959 F.3d 1330 (11th Cir. 2020).....38

*Pearson v. Callahan*,
555 U.S. 223, 231 (2009).....29

*Pierce v. Gilchrist*,
359 F.3d 1279, 1298 (10th Cir. 2004).....30

*Raiche v. Pietroski*,
623 F.3d 30 (1st Cir. 2010).....34

*Ralston v. Cannon*,
884 F.3d 1060, 1066-67 (10th Cir. 2018).....9, 10

*Roe v. City of Cushing*,
No. 93-6039, 1993 U.S. App. LEXIS 31404, at *8
(10th Cir. Nov. 24, 1993).....16, 32, 33, 36, 38

*Sanabria v. Martins*,
568 F. Supp. 2d 220 (D. Conn. 2008).....27

*Sayed v. Virginia*,
744 F. App'x 542, 547-48 (10th Cir. 2018).....19

*Sconiers v. Lockhart*,
946 F.3d 1256 (11th Cir. 2020).....38

*Shannon v. Koehler*,
616 F.3d 855, 858-63 (8th Cir. 2010).....39

*Shrum v. City of Coweta*,
449 F.3d 1132, 1137-38 (10th Cir. 2006).....1, 8

*Smith v. City of Troy, Ohio*,
874 F.3d 938 (6th Cir. 2017)........................................................................39

*Smithart v. Towery*,
79 F.3d 951, 952 (9th Cir. 1996) ..................................................................27

*Sullivan v. Gagnier*,
225 F.3d 161, 165-66 (2d Cir. 2000)..............................................................26

*Thomas v. Kaven*,
765 F.3d 1183, 1194 (10th Cir. 2004)............................................................30

*Tolan v. Cotton*,
134 S. Ct. 1861, 1866 (2014) .................................................................13, 29

*Ullery v. Bradley*,
949 F.3d 1282 (10th Cir. 2020)......................................................................29

*Valdez v. Motyka*,
804 F. App'x 991 (10th Cir. 2020) ..............................................................9, 10

*Valdez v. Motyka*,
416 F. Supp. 3d 1250 (D. Colo. 2019).............................................................9

*Vette v. Sanders*,
989 F.3d 1154, 1162 (10th Cir. 2021).......................................................13, 14

*Walker v. City of Orem*,
451 F.3d 1139, 1161 (10th Cir. 2006)..............................................................8

*Weiss v. Casper*,
593 F.3d 1163, 1167 (10th Cir. 2010)............................................................29

## STATEMENT OF RELATED CASES

None.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee ("Ms. Surat") generally agrees with the jurisdictional statement by Defendant-Appellant ("Defendant Klamser"). However, as briefed in Plaintiff-Appellee's Motion to Dismiss Appeal on September 27, 2021, this Court lacks jurisdiction to review Defendant's appeal because it presents arguments beyond the "abstract issues of law" over which this Court has interlocutory jurisdiction. *Shrum v. City of Coweta*, 449 F.3d 1132, 1137-38 (10th Cir. 2006) ("Orders denying qualified immunity before trial are appealable only to the extent they resolve abstract issues of law." (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996))). Defendant Klamser's interlocutory appeal, which has been certified as frivolous by the district court, is premised on challenges to the court's findings of material fact. "An interlocutory appeal is improper when the question is the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact." *Id.* (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

## ISSUES PRESENTED FOR REVIEW

Ms. Surat objects to Defendant's seeking review of the district court's factual determinations. This interlocutory appeal must be limited to "abstract issues of law," *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997), namely:

I. Whether, based on the facts that the district court assumed the jury could find when it denied summary judgment to Defendant Klamser, a reasonable jury could conclude that Defendant Klamser violated Ms. Surat's Fourth Amendment right to be free from excessive force by violently slamming her face-first onto the concrete;

II. Whether forcefully slamming a nonviolent misdemeanant face-first onto concrete was a clearly established Fourth Amendment violation on April 6, 2017.

## STATEMENT OF THE CASE

### A. Defendant Klamser used excessive force in effecting a lawful arrest of Ms. Surat.

This is a case of excessive and unreasonable use of force by Defendant Officer Randall Klamser against Plaintiff Michaella Surat.[1] On April 6, 2017, Ms. Surat was a student at Colorado State University celebrating her twenty-second

[1] The following statement of the case views the record in the light most favorable to Ms. Surat, as required at summary judgment.

birthday at Bondi Beach Bar in Fort Collins, Colorado, with her then-boyfriend Mitchell Waltz and a few of their friends.

Fort Collins Police Services ("FCPS") Officers Defendant Klamser and Garrett Pastor were called to Bondi Beach Bar to investigate an altercation that involved Mr. Waltz. App. Vol. 2 at 49. By the time they arrived, the altercation had dissipated. Mr. Waltz stood on the sidewalk outside the bar, and Ms. Surat was on the bar patio.

While Officer Pastor spoke with Mr. Waltz, Defendant Klamser spoke with the bar's bouncer, Cory Esslinger. Ms. Surat then walked out of the bar past Defendant Klamser and Mr. Esslinger toward Mr. Waltz. Ms. Surat did not bump into Defendant Klamser. App. Vol. 2 at 177-78; Klamser BWC Video, 00:48 to 00:51; Pastor BWC Video, 01:12-01:17.[2]

On learning from Mr. Esslinger that Mr. Waltz had been involved in the altercation, Defendant Klamser yelled to Officer Pastor that Mr. Waltz was not free to go. Before Defendant Klamser said that Mr. Waltz was not free to go, Ms. Surat had started to walk away with Mr. Waltz. App. Vol. 2 at 181; Klamser BWC Video, 00:40 to 01:00; Pastor BWC Video, 01:15 to 01:21.

[2] For the Court's ease of reference, video exhibits filed conventionally (*see* App. Vol. 2 at 94 & 243) are cited with the formatting used in Appellant's Opening Brief.

Ms. Surat did not attempt to "walk through" Defendant Klamser to reach Mr. Waltz. App. Vol. 2 at 185-86. Rather, she was stopped by Defendant Klamser, who immediately became physical and told Ms. Surat to "back off" while pushing her shoulder backwards with his hand. Klamser BWC Video, 00:58 to 01:08. In response to Defendant Klamser pushing and then grabbing her, Ms. Surat stated, "you don't need to touch me." Klamser BWC Video, 00:58 to 01:08. Contrary to Defendant Klamser's testimony, video footage of the encounter confirms Ms. Surat's testimony that she never hit Defendant Klamser nor grabbed his throat. App. Vol. 2 at 185; App. Vol. 3 at 32-33; Klamser BWC Video, 01:00 to 01:30; App. Vol. 2 at 243 ("Barstool CSU Video").[3]

Defendant Klamser then grabbed Ms. Surat's wrist and arm and pulled her arm behind her back, placing her into a rear wristlock hold. Klamser BWC Video, 01:09 to 01:13. He told Ms. Surat she was under arrest. *Id.* Ms. Surat attempted to pry Defendant Klamser's fingers off her arm. App. Vol. 2 at 49, 88, 185; Klamser BWC Video, 01:10 to 01:20; Pastor BWC Video, 01:24 to 01:52. Then, despite

---

[3] Further, FCPS policy requires police officers claiming injuries on the job to have their injuries photographed, but Defendant Klamser did not have any photographs taken, and never received any medical attention, despite his allegation that Surat hit him and tried to choke him. App. Vol. 3 at 117-21. When asked if he ever saw any marks on his neck, Defendant Klamser testified that he could not "see his neck" and did not bother to check if there were any marks. App. Vol. 3 at 120-21. These facts undermine Defendant Klamser's assertion that Ms. Surat attempted to hurt him.

being twice Ms. Surat's size and knowing that she was clearly unarmed in a dress and high heels, posed little to no immediate threat to the officers or others, and offered only minimal resistance, Defendant Klamser threw Ms. Surat face-first on the concrete using a "rowing arm takedown" or "face-plant" maneuver. *See* Barstool CSU Video; App. Vol. 2 at 150-51, 159, 188; App. Vol. 3 at 39, 103, 110-11, 121. A bystander video of this shocking, violent, and excessive use of force went internationally viral. *See* Barstool CSU Video.

Ms. Surat sustained a concussion, cervical spine strain, contusions to her face, and bruising on her arms, wrists, knees, and legs. App. Vol. 4 at 223-38. Dan Montgomery, Plaintiff's use of force expert with over forty-seven years of experience in policing, opined that by slamming Ms. Surat to the pavement face-first, Defendant Klamser used potentially deadly force or force causing serious bodily injury that was not proportionate to Ms. Surat's low-level resistance, especially because Defendant Klamser could have reasonably used much less force to secure Ms. Surat. App. Vol. 3 at 94-98, 103.

In connection with this incident, Ms. Surat was ultimately convicted of misdemeanor resisting arrest and obstruction of a peace officer in violation of Colo. Rev. Stat. §§ 18-8-103 and 18-8-104(1)(a).

### B. Plaintiff initiated the instant civil rights action.

Ms. Surat initiated this 42 U.S.C. § 1983 action on March 26, 2019, asserting claims against Defendant Klamser and the City of Fort Collins for excessive force in violation of the Fourth Amendment. App. Vol. 1 at 22-35. Defendants Klamser and Fort Collins (collectively, "Defendants") filed their Motion to Dismiss on June 7, 2019. App. Vol. 1 at 38. In its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, the district court, in relevant part, dismissed Plaintiff's excessive force claim to the extent it was based on any conduct prior to the face-plant takedown, as such challenge was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), due to Ms. Surat's convictions for resisting and obstruction. App. Vol. 1 at 163-70. However, the court denied the motion to dismiss to the extent it was based on the forceful takedown of Ms. Surat by Defendant Klamser. App. Vol. 1 at 169-70.

On October 13, 2020, Defendants moved for summary judgment. App. Vol. 2 at 23. The district court denied the motion on July 13, 2021. Order Denying Defendants' Motion for Summary Judgment p. 1 (hereinafter, "Order Denying MSJ"). In ruling on the motion, the court specifically identified many disputed issues of material fact. *Id.* at 2-4. The district court concluded that Defendant Klamser is not entitled to qualified immunity because Ms. Surat presented evidence that "the amount of force used to subdue her was objectively

unreasonable considering the *Graham* factors," and "Klamser should have been on notice that his alleged actions—slamming a woman approximately half his size into the ground because she was resisting arrest for a misdemeanor—would violate clearly established law." *Id.* at 7, 10.

Ms. Surat moved for an Order Certifying Defendant Klamser's Interlocutory Appeal as Frivolous. The district court granted Ms. Surat's motion, concluding that the instant interlocutory appeal is a frivolous, "thinly-veiled and poorly-reasoned attempt to thwart the [district] [c]ourt's clear determination that disputed issues of fact preclude a grant of summary judgment in his favor." Supp. App. at 29.

Ms. Surat then moved to dismiss the appeal in this Court on September 27, 2021. The Motion to Dismiss Appeal is pending before the merits panel.

## SUMMARY OF ARGUMENT

Defendant Klamser does not and cannot argue that, under the district court's view of the summary judgment record, he is entitled to summary judgment and qualified immunity on Ms. Surat's excessive force claim. Instead, he urges this Court to reject its well-established jurisdictional limitations by (1) setting aside the many genuine issues of material fact recognized by the district court in denying him qualified immunity; and (2) reviewing the district court's *Heck* determinations. Neither of these arguments are proper upon interlocutory appeal. This Court should dismiss the instant frivolous appeal on those grounds.

However, should the Court review Defendant Klamser's improper arguments on the merits, viewing the evidence in the light most favorable to Ms. Surat as mandated on a review of a summary judgment order, this Court should affirm the district court's order denying summary judgment.

## ARGUMENT

### A. Standard of Review

This court reviews *de novo* the denial of a summary judgment motion raising qualified immunity. *Shrum*, 449 F.3d at 1137-38. "[O]rders denying qualified immunity before trial are appealable only to the extent they resolve abstract issues of law." *Id.* (citing *Behrens*, 516 U.S. at 313). Thus, in considering an interlocutory qualified immunity appeal, this Court "must 'take, as given, the facts that the district court assumed when it denied summary judgment' to the Defendant." *Id.* (quoting *Johnson*, 515 U.S. at 317, 319). "[This Court is] not only required to accept plaintiff's version of events; [it is] also required to draw all reasonable inferences in favor of the non-moving party." *Walker v. City of Orem*, 451 F.3d 1139, 1161 (10th Cir. 2006). "An interlocutory appeal is improper when the question is the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact." *Id.* (citing *Johnson*, 515 U.S. at 313). A grant of qualified immunity is not appropriate if

material facts are in dispute. *Bridges v. Yeager*, 352 F. App'x 255, 258 (10th Cir. 2009) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002)).

### B. **Defendant's attacks on the district court's factual conclusions are beyond this Court's jurisdiction on interlocutory appeal.**

To the extent that arguments in Defendant's Opening Brief contradict or challenge the district court's factual inferences, this Court has no jurisdiction to consider those arguments. *See Ralston v. Cannon*, 884 F.3d 1060, 1066-67 (10th Cir. 2018). This Court only has "jurisdiction to review (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Id.* This Court *does not* have jurisdiction to review the district court's factual determinations and as such, it lacks jurisdiction over "challenge[s] to the facts the district court concluded a reasonable jury could infer." *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013).

This Court dismissed an interlocutory appeal based on qualified immunity for lack of jurisdiction under circumstances virtually identical to this case in *Valdez v. Motyka*, 804 F. App'x 991 (10th Cir. 2020). In *Valdez*, a defendant officer appealed the district court's denial of qualified immunity on the plaintiff's excessive force claim, asserting that the appeal turned on questions of law. *Id.* at 992. The district court certified the appeal as frivolous "because it turned on evidentiary sufficiency no matter how else phrased." *Valdez v. Motyka*, 416 F.

Supp. 3d 1250 (D. Colo. 2019). This Court agreed with the district court that the denial of qualified immunity was based on evidentiary sufficiency, noting that "the district court clearly articulated which factual disputes precluded granting qualified immunity to Sergeant Motyka and provided a detailed analysis of how those facts could lead to a jury's reasonable conclusion that Sergeant Motyka violated Mr. Valdez's Fourth Amendment rights." *Valdez*, 804 F. App'x at 995. The Court concluded that dismissal of the appeal was warranted because "[t]hough the Appellants argue legal errors pervade the district court's view of the facts concerning seizure and objective reasonableness, in the end they are challenging the district court's view of the facts." *Id.* (citing *Ralston*, 884 F.3d at 1067-68).

The exact same jurisdictional hurdles are present in this case and require dismissal. Although Defendant Klamser describes his argument as a legal challenge, in fact, "[he is] challenging the district court's view of the facts." *Valdez*, 804 F. App'x at 995. In denying summary judgment, the district court found the following factual disputes concerning the extent of Ms. Surat's physical contact with Defendant Klamser—including whether Ms. Surat bumped into him, attempted to "walk through" him, slapped him, or put her hands on his throat:

- "Defendants assert that Surat physically bumped into Klamser and Esslinger, though Surat disputes that she made physical contact with Klamser." Order Denying MSJ at 2;

- "Defendants assert that Surat attempted to 'walk through' Klamser to reach Waltz, which Surat denies." *Id.* at 3;
- "Klamser testified in his deposition that when he tried to block Surat, she started to slap him and put her hands on his throat. Surat testified in her deposition that she did not physically attack Klamser or put her hands on his throat." *Id.*;
- "Klamser testified that Surat was hitting him as he attempted to place her in handcuffs, but Surat testified that she did not hit him." *Id.*; and
- "The video footage of the event does not" support Klamser's testimony that Surat was "assaulting or threatening Klamser immediately before he used the takedown maneuver." *Id.* at 6.

Drawing all factual inferences in favor of Ms. Surat, the district court found that a reasonable juror could conclude that Ms. Surat—who was unarmed, nearly half Defendant Klamser's weight, and not assaulting or threatening him immediately before the takedown—was not an immediate threat to Defendant Klamser's safety. *Id.* at 6.

Contrary to the district court's order and the applicable legal standards at summary judgment, Defendant Klamser assumes throughout his opening brief that his preferred version of the factual disputes identified by the district court are true. For example, he asserts that Ms. Surat

- "physically bumped into both Mr. Esslinger and Officer Klamser," Opening Brief p. 16;
- "was being belligerent and abusive towards Officer Klamser," *id.* at 18;
- "continued to try to walk through Officer Klamser, and she started slapping and hitting him," *id.*;
- "grabbed [Defendant Klamser's] throat," *id.*;
- "was assaulting and hitting Officer Klamser," *id.* at 19;
- "either struck or attempted to strike Officer Klamser multiple times" before the takedown, *id.* at 20; and
- was "assaultive including slapping and hitting Officer Klamser" and "grabbing his throat," *id.* at 36.

Defendant Klamser then uses his preferred version of the disputed facts to argue that the district court erred in finding both a constitutional violation and a violation of clearly established law. On the first prong of qualified immunity, he argues that the district court erred in concluding that the *Graham* factors weigh in favor of Ms. Surat because, under his version of the facts, Ms. Surat was "threatening, hostile and violent," *id.* at 26, "assaultive[,] including slapping and hitting Officer Klamser, [and] grabbing his throat," *id.* at 36, and responded to Defendant Klamser with "physical violence," *id.* at 37. Likewise, on the second

prong, he argues that the law was not clearly established based on his preferred version of the facts, not the facts found by the district court. *See, e.g.*, *id.* at 38 ("the precedent relied upon by the District Court does not support the law being clearly established *based on the actual facts of the interaction*" (emphasis added)); *id.* at 41-56 (factually distinguishing cases by, for example, characterizing Ms. Surat's behavior as "physical violence and threats" and "escalating actions"). This Court has rejected such an attempt to "nominally frame" a challenge to the facts "as a legal issue" when the defendant merely asserts facts contrary to what the district court found and then relies on such facts to distinguish the case at issue from prior cases. *Fancher*, 723 F.3d at 1199-1200.

As Defendant Klamser's arguments "cannot be understood as anything other than an attack on the[] [factual] conclusions of the district court, this Court lacks jurisdiction to consider them." *Id.* at 1200. This Court should dismiss Defendant Klamser's appeal on this basis alone. At the very least, this Court must disregard Defendant Klamser's factual arguments in its consideration of whether he violated Ms. Surat's clearly established constitutional rights. *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (holding that "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions").

Indeed, the Tenth Circuit cases that Defendant cites for the proposition that this Court has jurisdiction over the factual disputes in this case support Plaintiff's

position. *See Vette v. Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021) (explaining that this Court will not "'look beyond the facts found and inferences drawn by the district court' unless those findings 'constitute visible fiction'" (quoting *Crowson v. Wash. Cty.*, 983 F.3d 1166, 1177 (10th. Cir. 2020))); *Estate of Jensen v. Clyde*, 989 F.3d 848, 854-55 (10th Cir. 2021) (accepting as true the facts the district court relied upon in denying qualified immunity at summary judgment where the district court clearly identified the facts it relied on in denying summary judgment). Defendant Klamser has fallen well short of satisfying the "very difficult" standard of establishing that the district court's findings constitute "visible fiction" blatantly contradicted by the record. *Vette*, 989 F.3d at 1162. Therefore, this Court must take as given the district court's factual determinations for purposes of the interlocutory appeal and may only review abstract issues of law regarding qualified immunity.

### C. The district court did not err in concluding that a reasonable jury could find Defendant Klamser violated Ms. Surat's constitutional rights.

While it is beyond dispute that Ms. Surat was resisting Defendant Klamser's effort to arrest her by attempting to pry his grip from her arm and trying to pull away from him, it is equally beyond dispute that Defendant Klamser's body slamming of Ms. Surat in an effort to end the 'dance' they were engaged in was grossly excessive. While a picture may be worth 1,000 words, the viral video in this case is worth 1,000 pleadings and one viewing by this Court will put to rest

any arguments Defendant Klamser attempts to make that his use of force was not excessive. *See* Barstool CSU Video.

The district court correctly concluded that summary judgment is inappropriate because a reasonable jury could find Defendant Klamser violated Ms. Surat's Fourth Amendment right to be free from excessive force. This Court has made clear that "[a] grant of qualified immunity is not appropriate if material facts are in dispute[,]" *Bridges*, 352 F. App'x at 258 (citing *Olsen*, 312 F.3d at 1313), and the district court correctly concluded that many disputed issues of material fact precluded a grant of qualified immunity in this case. "[S]ummary judgment motions may not be granted on any excessive force claims under § 1983 for which *any* genuine issue of material fact remains—regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Bridges*, 352 F. App'x at 258 (quoting *Olsen*, 312 F.3d at 1314).

"[This Court] treats excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment." *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016). Accordingly, a plaintiff prevails on her Fourth Amendment claim of excessive force if she demonstrates that the force used was objectively unreasonable "in light of the facts and circumstances confronting [the officer defendants], without regard to their underlying intent or motivation."

*Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation omitted). "In assessing objective reasonableness, [this Court] evaluate[s] whether the totality of the circumstances justified the use of force." *Havens v. Johnson*, 783 F.3d 776, 781 (10th Cir. 2015). The Court must construe the facts in favor of the nonmoving party, Ms. Surat. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

The Supreme Court has delineated three non-exclusive factors relevant to the inquiry of whether an officer's actions are objectively reasonable in this context: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether she is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

In denying summary judgment, the district court properly applied the *Graham* factors to the record and concluded that the factors weigh in favor of Ms. Surat. First, the district court concluded that the first *Graham* factor weighs in favor of Ms. Surat because she was convicted of the misdemeanors of resisting arrest and obstruction of a peace officer, which are not severe crimes. Order Denying MSJ p. 6 (citing *Roe v. City of Cushing*, No. 93-6039, 1993 U.S. App. LEXIS 31404, at *8 (10th Cir. Nov. 24, 1993) (finding conviction of resisting arrest not severe); C*asey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (finding obstruction a minor crime)).

Next, the district court concluded that the second *Graham* factor also weighs in favor of Ms. Surat. The court found that Ms. Surat was an unarmed, 22-year-old, 115-pound woman, and Defendant Klamser was a 30-year-old, 200-pound man. Contrary to Defendant Klamser's claims, as depicted by the ample video evidence in this case, Ms. Surat was not assaulting or threatening Defendant Klamser before the takedown.[4]

Instead, Defendant Klamser was holding Ms. Surat by her wrists as she attempted to pull away from his grip just before he slammed her face-first into the concrete. Thus, the district court properly concluded that a reasonable jury could find Ms. Surat posed little to no threat to the safety of Defendant Klamser or anyone else at the time of the forceful takedown. *See* Order Denying MSJ p. 6 (citations to the record omitted) (citing *Morris v. Noe*, 672 F.3d 1185, 1189-90 (10th Cir. 2012) (finding excessive force where police officers used takedown maneuver on unarmed, intoxicated man because he posed little to no threat to the safety of officers)).

Finally, with respect to the third *Graham* factor, the court acknowledged that Ms. Surat does not dispute that she resisted arrest. However, the district court applied Tenth Circuit precedent that held "extreme force is unjustified where a

---

[4] *See* App. Vol. 2 at 163, 185, 202; App. Vol. 3 at 32-33, 36-38, 103; Barstool CSU Video; *see generally* App. Vol. 4 at 23-183; Klamser BWC Video, 01:00 to 01:35; 1:4; Pastor BWC Video, 01:24 to 01:52.

plaintiff resisted arrest but the crime was non-severe and the plaintiff did not pose a serious or immediate threat to the officers' safety."[5] Ultimately, the district court concluded that, "[a]s Surat has presented evidence that the amount of force used to subdue her was objectively unreasonable considering the *Graham* factors, issues of fact exist as to whether Klamser used excessive force." *Id.* at 7. The district court made no legal error in its weighing of the *Graham* factors nor, therefore, in its determination that a reasonable jury could find that Defendant Klamser committed a constitutional violation when he forcefully "slamm[ed] a woman approximately half his size into the ground because she was resisting arrest for a misdemeanor." Order Denying MSJ p. 10; *see Bridges*, 352 F. App'x at 258.

### D. Defendant's attacks on the district court's *Heck* determinations are beyond this Court's jurisdiction on interlocutory appeal.

On the first prong of qualified immunity, Defendant Klamser is dressing up a *Heck* challenge as a qualified immunity challenge. This Court has made clear that

[5] Order Denying MSJ p.7 (citing *Long v. Fulmer*, 545 F. App'x 757, 759-60 (10th Cir. 2013) (finding excessive force where officers tackled plaintiff after plaintiff "protested and pulled away" during arrest for unauthorized entry into closed hospital cafeteria); *Roe*, 1993 U.S. App. LEXIS 31404, at *3-9 (finding takedown maneuver excessive force where plaintiff verbally resisted arrest for possession of a non-intoxicating substance by a minor); *Davis*, 825 F.3d at 1136-37 (finding excessive force where officers shattered plaintiff's car window and pulled her through the window despite refusal to exit vehicle)); *see also Cook v. Peters*, 604 F. App'x 663, 664-65 (10th Cir. 2015) (finding excessive force where sheriff tackled teenager who weighed 200 pounds less based on misdemeanor breach of peace).

it lacks jurisdiction over a district court's *Heck* determinations on interlocutory appeal, and it should reject Defendant Klamser's attempt to circumvent the Court's jurisdictional limitations. *Sayed v. Virginia*, 744 F. App'x 542, 547-48 (10th Cir. 2018).

This Court rejected an interlocutory appeal asserting the exact argument Defendant Klamser lodges now—i.e., that he is entitled to qualified immunity because Ms. Surat's excessive force claim is barred by *Heck*—in *Sayed*, 744 F. App'x at 547-48. As in this case, the appellants in *Sayed* argued that the district court erred in separately analyzing qualified immunity and *Heck* because the two issues are "inextricably intertwined." *Id.* at 547. The *Sayed* Court determined that it lacked interlocutory jurisdiction to consider the district court's *Heck* determination because *Heck* is an analytically distinct doctrine that does not bear on the qualified immunity inquiry:

> qualified immunity asks whether a defendant violated a constitutional or statutory right that was clearly established, *Heck* evaluates whether a favorable judgment on a prisoner's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence[.]" The *Heck* analysis does not bear on the qualified immunity inquiry, and because *Heck* issues are effectively reviewable on appeal while the denial of qualified immunity is not, courts generally decline to exercise jurisdiction over *Heck* issues raised on interlocutory appeal from the denial of qualified immunity.

*Id.* at 547-48 (brackets added and citation omitted).

In accordance with this Court's clear precedent, this Court should dismiss the instant appeal on the grounds that the qualified immunity and *Heck* issues presented are not inextricably intertwined and the *Heck* issues raised by Defendant Klamser are inappropriate for interlocutory review.

**E. The district court did not err under *Heck* in denying Defendant Klamser summary judgment.**

Assuming, *arguendo,* this Court were to address the merits of Defendant Klamser's *Heck* arguments, the Court must reject them for two reasons. First, Defendant erroneously assumes that the jury found Ms. Surat guilty of both offenses using the elements that are most favorable to him. Second, he asserts that the district court should have found that all evidence put forth by the defense was undisputed.

In *Heck*, the Supreme Court held that a plaintiff could not bring a civil rights claim for damages under § 1983 "based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens*, 783 F.3d at 782 (citing *Heck*, 512 U.S. at 480-87). Conversely, where "the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

"An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Havens*, 783 F.3d at 782. "For

example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* "To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense [s]he committed." *Id.*

In granting in part Defendants' first Motion to Dismiss, the district court compared Ms. Surat's allegations with the offenses she committed and dismissed with prejudice any claim of excessive force based on Defendant Klamser's alleged pre-takedown actions, in order to comply with *Heck*. App. Vol. 1 at 163. But with respect to the takedown, the court explained, "it is clear after [*Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999),] that that there is no necessary inconsistency with a resisting-arrest verdict (or an obstruction verdict, as in this case) if a civil jury were to find that the force used to overcome a suspect's resistance was excessive." App. Vol. 1 at 165 (citing *Martinez*, 184 F.3d at 1126-27). Accordingly, because Plaintiff's excessive force claim is limited to the question of whether Officer Klamser used greater force than reasonably necessary to overcome her resistance during the takedown, judgment in Plaintiff's favor would not "necessarily imply the invalidity" of her convictions. *Heck*, 512 U.S. at 487.

Defendant Klamser's arguments on appeal rely on the flawed premise that, for *Heck* purposes, the Court must assume that the jury convicted Ms. Surat of

actually using violence against him and, thus, must take as true certain facts that the district court rightly found to be disputed. Pursuant to the jury instructions in Ms. Surat's criminal case,[6] the jury could have convicted Ms. Surat of resisting arrest for using or threatening to use physical force against Defendant Klamser.[7] The jury also could have convicted Ms. Surat of obstructing a peace officer by using or threatening to use force or physical interference. To the extent the jury may have convicted Ms. Surat of these offenses based on her using force rather than merely threatening to do so, the criminal jury may reasonably have found that Ms. Surat used physical force when she attempted to pry Defendant Klamser's

---

[6] The jury instruction given for the crime of resisting arrest during Ms. Surat's criminal trial was that she "(4) prevented or attempted to prevent a peace officer, (5) acting under color of his official authority, (6) from effecting an arrest of the defendant or another, (7) by using or threatening to use physical force or violence[,] (8) against the peace officer or another." App. Vol. 4 at 196. The jury instruction given for the crime of obstructing a peace officer was that Ms. Surat "(4) obstructed, impaired, or hindered the preservation of the peace, (5) by a peace officer, (6) acting under color of his official authority, (7) by using or threatening to use violence, force or physical interference or obstacle." App. Vol. 4 at 197.

[7] The resisting arrest statute, Colo. Rev. Stat. § 18-8-103, states that a person commits the crime of resisting arrest by "(a) [u]sing or threatening to use physical force or violence against the peace officer or another; or (b) [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another." Colo. Rev. Stat. § 18-8-103(1)(a)-(b). In Ms. Surat's criminal trial, part (b) of the resisting arrest statute was *not* included in the jury instruction for resisting arrest. *See* App. Vol. 4 at 196. Therefore, Ms. Surat was convicted of resisting arrest pursuant to part (a) of the statute, and part (b) is irrelevant to the analysis of her excessive force claim. This Court should disregard Defendant Klamser's references to part (b) of the resisting arrest statute—i.e., "substantial risk of causing bodily injury." *See, e.g.*, Opening Brief pp. 12, 32, 34.

hands off of her arm and pull away from him, not that she hit him or grabbed his throat as he claimed.

Therefore, as the district court observed in its order certifying the instant appeal as frivolous, Ms. Surat's conviction did not necessarily require a finding that she posed an immediate threat to Defendant Klamser's safety:

> Klamser appears to argue that because one element of Surat's resisting arrest conviction is that the arrestee's actions "were subjecting him to, or threatening him with, physical force or violence, or putting him at substantial risk of bodily injury," Surat *necessarily* posed an immediate threat to his safety. Throughout the response, Klamser conflates the clauses of this element, contending that Surat's conviction establishes that he was at substantial risk of bodily injury and therefore justified his use of the takedown maneuver.
>
> Klamser's suggestion that Surat's conviction *required* a finding that she placed him at substantial risk of bodily injury is, at the very least, misleading. It is not difficult to imagine a situation where a lesser included element of the offense is satisfied—*i.e.* Surat threatened Klamser with physical force—but where Klamser was not in any immediate danger such that his use of the rowing arm takedown was justified under the *Graham* analysis. Thus, as the Court determined, clear questions of disputed fact exist as to whether Surat posed an immediate threat to Klamser's safety. As a result, the Court concluded, and herein reaffirms, that this genuine issue of material fact precluded a finding of qualified immunity in Klamser's favor.

Supp. App. at 28.

Defendant Klamser is also incorrect in arguing that evidence favorable to his defense must be undisputed under *Heck* because of Ms. Surat's criminal convictions. Opening Brief p. 35 ("Plaintiff cannot dispute her actions were threatening, hostile and violent towards Officer Klamser."). Defendant Klamser's

arguments concerning the summary judgment record and which facts are admissible under *Heck* rely on the same flawed argument discussed above—i.e., that the criminal jury must have convicted Ms. Surat of actually using violence against Defendant Klamser by striking him and grabbing his throat. But not all factual inferences favorable to Ms. Surat are inconsistent with Ms. Surat's convictions. For example, Ms. Surat has presented evidence that the only time she put her hands on Defendant Klamser was when she tried to pry his hands off of her, which the video supports. Defendant Klamser does not, and cannot, establish how evidence that Ms. Surat did not hit him or grab his throat is necessarily inconsistent with her convictions. Just as a reasonable jury could have convicted Ms. Surat for threatened use of force or for using force by trying to pry Defendant Klamser's hands off her, instead of violently striking him and grabbing his throat, a reasonable jury could have convicted Ms. Surat of the misdemeanor crimes at issue without finding that she hit Defendant Klamser or grabbed his throat. Because evidence in the summary judgment record that establishes Ms. Surat did not attack Defendant Klamser is not necessarily inconsistent with her convictions, the district court was correct in concluding that said facts are disputed for the purposes of summary judgment and must be decided by a jury.[8]

---

[8] Defendant Klamser's arguments concerning the inadmissibility of evidence under *Heck* would have this Court comb through the summary judgment record to determine fact by fact what is disputed. This is precisely the kind of task that is

The district court's denial of summary judgment in this case is consistent with this Court's precedent concerning the effect of *Heck* on excessive force claims. In *Martinez*, 184 F.3d at 1125, the plaintiff attempted to flee from police by car and, after a brief chase, stopped his car, rolled down the window, and refused to exit the vehicle. When one of the arresting officers reached in the window to unlock the door, the plaintiff rolled up the window on the officer's arm. Another officer struck the plaintiff in the face, after which the officers arrested the plaintiff. The plaintiff was found guilty of resisting arrest under New Mexico law and brought a § 1983 claim against the officers, alleging that they used excessive force against him in effecting the arrest. *Id.* The district court granted summary judgment on the plaintiff's excessive force claim, concluding that it challenged the validity of his state court conviction for resisting arrest under *Heck*. This Court reversed the lower court's grant of summary judgment, concluding that, to the extent the plaintiff's federal suit did not challenge the *lawfulness* of his arrest and conviction, "*Heck* [did] not bar him from pursuing his civil rights claims in federal

---

best left to the expertise of the district court and that would constitute an unwise use of appellate resources. The Court should follow the Supreme Court's reasoning in *Johnson* and reject Defendant Klamser's invitation to labor through the pretrial record in this case. *See Johnson*, 515 U.S. at 314 (noting trial judges have expertise in determining "the existence, or nonexistence, of a triable issue of fact" and cautioning that "questions about whether or not a record demonstrates a 'genuine' issue of fact for trial, if appealable, can consume inordinate amounts of appellate time[,]" particularly in constitutional tort cases).

court" because a "finding that the police officers used excessive force to arrest [the plaintiff] would in no manner demonstrate the invalidity of [his] state court conviction for resisting arrest." *Id.* at 1124-26.

Like the plaintiff in *Martinez,* Ms. Surat does not challenge the lawfulness of her arrest in this case. She concedes that she resisted arrest, albeit minimally and nonviolently, by attempting to pull Defendant Klamser's fingers off of her wrist and trying to pull away from him. However, her resistance is "a question separate and distinct from whether [Defendant Klamser] exercised excessive or unreasonable force in effectuating h[er] arrest," and it "would not authorize [Defendant Klamser] to employ excessive or unreasonable force in violation of [her] Fourth Amendment rights." *Martinez,* 184 F.3d at 1127. A reasonable jury could find that Defendant Klamser used grossly excessive force by responding to her nonviolent attempt to pull away from his grip by slamming her face-first onto the concrete, without finding that she did not resist arrest and obstruct police officers. Under the circumstances of this case, Ms. Surat's convictions for resisting arrest and obstruction can easily "coexist with a finding that [Defendant Klamser] used excessive force to subdue [her]." *Id.*[9]

[9] The district court's order is also in accordance with out-of-circuit precedent. *See, e.g.*, *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) ("The mere fact that [plaintiff] was conclusively shown by his prior convictions to have resisted arrest and harassed [the police officer] could not foreclose the possibility that the force used by [the officer] in response to [plaintiff's] misconduct was excessive.");

Pursuant to this Court's precedent, denial of summary judgment was correct under the circumstances because Ms. Surat's convictions do not preclude her excessive force claim under *Heck*, and the district court should be left to instruct the jury at trial on the lawfulness of the arrest in accordance with *Heck*. *See Martinez*, 184 F.3d at 1127 ("If this case proceeds to trial while Martinez' state court conviction remains unimpaired, the court must instruct the jury that Martinez' state arrest was lawful *per se*. The question for the jury is whether the police officers utilized excessive force in making that arrest." (citing *Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir. 1997) ("We leave it to the district court on remand to determine whether it will instruct the jury that Nelson was convicted of resisting arrest or whether the court merely will tell the jury that Jashurek was justified in using substantial force to arrest Nelson."))). Likewise, the district court will determine, pretrial through motions *in limine* or during trial as necessary, what

---

*Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997) (holding that conviction for resisting arrest did not prohibit the plaintiff from pursuing a § 1983 excessive force claim against the arresting officer because the plaintiff claimed that the officer "effectuated a lawful arrest in an unlawful manner" (cited with approval in *Martinez*, 184 F.3d at 1125, 1127)); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (allowing excessive force claim to proceed where plaintiff pleaded guilty to assault with a deadly weapon for driving a truck at defendants and defendants allegedly beat plaintiff with unnecessary force after the assault).

evidence, if any, must be excluded as inconsistent with Ms. Surat's convictions under *Heck*.[10]

**F. The district court did not err in concluding that the law was clearly established.**

As discussed in section B, *supra* p. 9 to 14, Defendant Klamser's arguments on the second prong of qualified immunity fail because he merely asserts facts contrary to what the district court found and then relies on such facts to distinguish prior cases. *See Fancher*, 723 F.3d at 1199-1200 (rejecting such an attempt to "nominally frame" a challenge to the facts "as a legal issue"). Notably, Defendant

---

[10] Defendant Klamser cites to *Sanabria v. Martins*, 568 F. Supp. 2d 220 (D. Conn. 2008), which also supports Plaintiff's position in this case. In *Sanabria*, the defendant police officer moved for summary judgment on the grounds of *Heck* and qualified immunity. The district court found that even putting aside parts of the plaintiff's testimony that were inconsistent with his guilty plea, factual disagreement existed with respect to whether the use of force was reasonable and whether the defendant's conduct was clearly unlawful and, therefore, denied qualified immunity and summary judgment in favor of the officer:

> Because Martins believes that *Heck* bars the bulk of Plaintiff's own testimony, Martins contends that the remaining evidence "support[s] a finding that the plaintiff was known to be possibly armed, dangerous[,] and concealed in the woods/brush in the darkness of night," which necessarily "entitle[s] [Martins] to qualified immunity based on the consistent, *admissible* evidence in this case." (*Id.*) However, even excluding those parts of Plaintiff's testimony that conflict with his guilty plea and conviction, there is considerable disagreement over what he did while being engaged by Thor and dragged out of the woods to be arrested. These factual circumstances are directly relevant to whether the use of force was reasonable and whether Martins's conduct was clearly unlawful, and are therefore both genuine and material.

*Id.* at 227.

Klamser does not argue in his opening brief that, viewing the evidence in the light most favorable to Ms. Surat, the district court erred in concluding that the law was clearly established. This Court should not construct those arguments on his behalf and, thus, should dismiss Defendant Klamser's appeal of the district court's clearly established law analysis as going beyond this Court's jurisdiction on interlocutory appeal.

Assuming, *arguendo*, this Court were to consider Defendant Klamser's arguments on this prong, he is not entitled to qualified immunity. In deciding qualified immunity, it is important that "inferences [are drawn] in favor of the nonmovant, even when…a court decides…the clearly-established prong of the standard." *Tolan*, 134 S. Ct. at 1866. Having properly drawn all reasonable factual inferences in favor of Ms. Surat, the district court correctly concluded that an officer's use of excessive force in slamming a nonviolent misdemeanant face-first onto concrete violated clearly established law in April of 2017.

Qualified immunity only shields government officials from liability if the official's challenged conduct did not violate a clearly established constitutional right of which a reasonable official would have known at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The law is clearly established when there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts…have found the law

to be as the plaintiff maintains." *Ullery v. Bradley*, 949 F.3d 1282 (10th Cir. 2020); *Weiss v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007)).

This Court has stressed that courts "cannot find qualified immunity wherever [they have] a new fact pattern." *Casey*, 509 F.3d at 1284. The inquiry should not be "a scavenger hunt for prior cases with precisely the same facts," but instead "whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, "[e]ven when no precedent involves facts materially similar to [the case at issue], the right can be clearly established if a precedent applies with obvious clarity. . . . Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Lowe v. Raemisch*, 864 F.3d 1205, 1210-11 (10th Cir. 2017); *see also Colbruno v. Kessler*, 928 F.3d 1155, 1165 (10th Cir. 2019) ("Fortunately, however, not every constitutional violation has factual antecedents. We can occasionally rely on the general proposition that it would be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted . . . even though existing precedent does not address similar circumstances.'" (citation omitted)); *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2004); *Currier v. Doran*, 242 F.3d 905, 923

(10th Cir. 2001) ("It is not necessary . . . for plaintiffs to find a case with exact corresponding factual circumstances; defendants are required to make reasonable applications of the prevailing law to their own circumstances." (citation omitted)). "After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

This Court has also recognized that "[b]ecause the existence of excessive force is a fact-specific inquiry, . . . 'there will almost never be a previously published opinion involving exactly the same circumstances.'" *Morris*, 672 F.3d at 1196-97 (quoting *Casey*, 509 F.3d at 1284).

In its Order Denying Summary Judgment, the district court determined that "Klamser should have been on notice that his alleged actions—slamming a woman approximately half his size into the ground because she was resisting arrest for a misdemeanor—would violate clearly established law." Order Denying MSJ p. 10. The court correctly concluded that the law was clearly established for three independently sufficient reasons: (1) the constitutional violation is particularly clear from the *Graham* factors themselves, *id.* at 9; (2) prior Tenth Circuit case law would have put a reasonable officer on notice that the face-plant takedown in this case was unconstitutional, *id.*; and (3) the clearly established weight of authority

from other jurisdictions has established that the face-plant takedown in this case was unconstitutional, *id.* at 9-10.

"[W]hen an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, [this Court does] not require a second decision with greater specificity to clearly establish the law." *Morris*, 672 F.3d at 1197 (quoting *Casey*, 509 F.3d at 1284); *see also Cook v. Peters*, 604 F. App'x 663, 667 (10th Cir. 2015) ("Based on the *Graham* factors alone, a reasonable officer in Mr. Peters' position would have known that a forceful takedown would constitute excessive force."); *see also Roe*, 1993 U.S. App. LEXIS 31404, at *8-9 ("Because *Graham* was decided . . . two years before the [use of force] in question, the law was clearly established at the time of the incident.").

In *Morris v. Noe*, this Court found that two of the *Graham* factors weighed strongly in the arrestee's favor, while one weighed slightly in the defendant officer's favor. In particular, the Court found that the second *Graham* factor weighed heavily in favor of the arrestee because he "posed no threat" to the officers or others, despite his large size, backing up toward the officers, and asking a bystander a confrontational question. *Id.* at 1196. Although the Court found no prior cases addressing "a forceful takedown that by itself caused serious injury," the Court concluded that the law was clearly established because the use of force was clearly unjustified based on the *Graham* factors alone and, therefore, "a

reasonable officer would know based on his training that the force used was not justified." *Id.* at 1197-98.

As described above and in the district court's order, the use of force in this case is clearly unjustified based on the *Graham* factors alone. Viewing the evidence in the light most favorable to Ms. Surat, Defendant Klamser used a violent, face-first takedown against an unarmed, 22-year-old woman when her resistance was minimal, her misdemeanor crimes were not serious, and she presented no risk of immediate (or any) threat to the officers or others. App. Vol. 2 at 158, 162; App. Vol. 3 at 96-97. A reasonable officer in Defendant Klamser's shoes would have known in light of *Graham* that violently "slamming a woman approximately half his size into the ground because she was resisting arrest for a misdemeanor" was unconstitutional. Order Denying MSJ p. 10. Thus, as concluded by the district court, Ms. Surat's right to be free from a forceful takedown under the circumstances was clearly established under *Graham* itself. *Morris*, 672 F.3d at 1197.

But even if *Graham* itself were insufficient to satisfy this prong, this Court's cases clearly establish that an officer may not use a forceful takedown maneuver on an unarmed misdemeanant who poses little to no immediate threat to the officer's or others' safety. *See Morris*, 672 F.3d at 1189-90, 1198; *Long*, 545 F. App'x at 759-60; *Roe*, 1993 U.S. App. LEXIS 31404.

In *Morris*, officers arrived at a residence for a domestic disturbance. 672 F.3d at 1189. The suspect, Morris, was over six feet tall, weighed 250 pounds, and was unarmed but intoxicated. *Id.* He stated to one of the residents at the scene, "[w]hy was you talking to Mama that way?" *Id.* at 1190. The resident approached Morris in confrontation, so Morris put his hands up and began backing up towards the police officers. *Id.* Two of the officers lunged at Morris and ran him into the bushes, throwing him to the ground and handcuffing him. *Id.* This Court concluded that two of the three *Graham* factors weighed in favor of Morris, including whether he posed an immediate threat to the officers or others. Citing the First Circuit in *Raiche v. Pietroski*, 623 F.3d 30 (1st Cir. 2010), the *Morris* court stated that *Graham* adequately put a reasonable officer in the defendant's position on notice of the unlawfulness of his actions:

> A reasonable officer . . . would not have needed prior case law on point to recognize that it is unconstitutional to tackle a person who has already stopped . . . and who presents no indications of dangerousness. Such conduct is a major departure from reasonable behavior under both the *Graham* factors and the officer's training.

672 F.3d at 1198.

Similarly, in *Long v. Fulmer*, 545 Fed. App'x 757 (10th Cir. 2013), the plaintiff attempted to check out various items from a university hospital cafeteria without knowing the cafeteria was closed. *Id.* at 759. After getting into a disagreement with the cafeteria manager, the police were called and two officers

arrived. *Id.* The officer attempted to place the plaintiff under arrest, but the plaintiff resisted and claimed he did nothing wrong. *Id.* The officer grabbed the plaintiff and instructed him to submit to arrest while attempting to physically restrain the plaintiff, but the plaintiff "protested and pulled away, asserting again that he had committed no crime." *Id.* at 759-60. The officer tackled the plaintiff to the ground, causing the plaintiff's shoulder to become separated. *Id.* at 760. The plaintiff was charged with a misdemeanor, which was later dismissed by the prosecutor. *Id.* at 759. In finding the officer's use of force excessive, the court determined the plaintiff's crime was minor, he posed no threat to the safety of officers or others, and despite the plaintiff's resistance weighing slightly in the officer's favor, the plaintiff's resistance was "only minimal." *Id.* at 760. This Court on appeal affirmed the denial of qualified immunity. Applying *Morris*, 672 F.3d at 1197-98, this Court agreed with the district court that "plaintiff's right to be free from a forceful takedown in this situation, even where he exercised some resistance, was clearly established under *Graham*." *Id.* at 761 (citation omitted).

This Court applied the *Morris* holding again in *Cook v. Peters*, 604 Fed. App'x 663 (10th Cir. 2015), and concluded that the law was clearly established based on the *Graham* factors. The district court had denied summary judgment in favor of the defendant sheriff/security guard on the basis of qualified immunity, concluding that a reasonable fact finder could infer that the defendant was 11

inches taller and 200 pounds heavier than the plaintiff; the plaintiff resisted arrest by pulling away from the defendant but posed little immediate threat to anyone at the time of the forceful takedown; and the plaintiff's crime (misdemeanor breach of the peace by using profane language) was relatively minor. *Id.* at 664-65. This Court affirmed, finding the plaintiff's right to be free from a forceful takedown under the circumstances was clearly established under *Graham*. *Id.* at 664-69.

In *Roe*, the plaintiff, a minor, was sitting in a parked truck with friends when an officer approached them and began talking to his friend. 1993 U.S. App. LEXIS 31404, at *3-4. The officer then witnessed the plaintiff put a beer in his jacket and ordered the plaintiff to stand in front of the police car, to which he complied. *Id.* at *4. A second officer arrived and asked the plaintiff whether he "had a fucking problem." *Id.* The plaintiff answered, "I might, if [you don't] quit fucking with my sisters." *Id.* The plaintiff repeated this statement to the other officer. *Id.* at *5. The officer told the plaintiff that he was under arrest and took him to the ground, where the officer's knees landed on top of the plaintiff's back, causing the plaintiff's head to strike the concrete. *Id.* The plaintiff was convicted of resisting arrest and possession of a nonintoxicating beverage by a minor. *Id.* at *6. The court affirmed the denial of summary judgment, finding that the plaintiff's crimes were not severe, there was little evidence he posed an immediate threat to the officers or others, and although he was resisting arrest, "it [wa]s not clear that the force used

was proportionate to the resistance offered." *Id.* at *8. This Court held that based on *Graham*, a reasonable officer in the defendant's position would have known that his conduct was unreasonable under the Fourth Amendment. *See id.* at *8-9.

Like the *Morris* plaintiff, only one *Graham* factor supported using this level of force against Ms. Surat while the other two factors weighed heavily against it. Critically, the second and most important factor—whether the suspect posed an immediate threat to the officers or others—weighed heavily in Ms. Surat's favor, as it did in *Morris.* In light of *Morris*, it should have been obvious to any reasonable officer in Defendant Klamser's position that under the circumstances, forcefully face-planting a nonviolent misdemeanant on concrete—who presents no danger or threat to the officer or others—is unlawful.

Just as this Court found that the law was clearly established in *Long*, *Cook,* and *Roe,* it should find that the law was clearly established in this case. In *Long*, his Court found the law was clearly established where the plaintiff protested and pulled away and the takedown occurred after the officer's verbal instructions to submit and attempts to physically restrain the plaintiff had failed; like the takedown in *Long*, Defendant Klamser's decision to slam Ms. Surat face-first to the concrete was not objectively reasonable despite her low-level resistance, considering the lack of immediate threat she posed and her minor, misdemeanor crimes. *See also Davis*, 825 F.3d 1131 (finding officers who shattered the

plaintiff's car window and pulled her through the broken window to arrest her plainly exceeded the amount of force proportional to the plaintiff's misdemeanor and the lack of threat she posed, despite the plaintiff having "rolled up her window, left her keys in the ignition, and refused to exit the vehicle when ordered to do so"). Moreover, as in *Cook*, the law is clearly established in this case because Defendant Klamser was nearly twice Ms. Surat's size, Ms. Surat did not pose an immediate threat to anyone despite her minimal resistance, and her misdemeanor crimes were minor. *Id.* at 664-65. Further, like the plaintiff in *Roe*, Ms. Surat's minimal resistance by dismissing Defendant Klamser's orders, turning away from him, and attempting to pry his hands off her arm did not justify being slammed face-first to the concrete, causing a concussion, cervical spine strain, contusions to her face, and bruising on her arms, wrists, knees, and legs.[11]

Finally, as recognized by the district court, the weight of authority in other circuits also clearly established the unreasonableness of a takedown under similar circumstances. *See Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) (despite plaintiff's conviction of resisting, obstructing, or opposing the defendant without violence, the guard's use of pepper spray and slamming the plaintiff to the ground may have violated the Eighth Amendment); *Patel v. City of Madison*, 959 F.3d

---

[11] *See* App. Vol. 2 at 163; App. Vol. 3 at 36-37, 83-84, 89-106, 135-36; App. Vol. 4 at 223-38; *see generally* App. Vol. 4 at 23-183; Klamser BWC Video; Pastor BWC Video; Barstool CSU Video.

1330 (11th Cir. 2020) (finding that, even if the plaintiff resisted arrest, the officer's head-first takedown was not proportional to the marginal resistance demonstrated); *Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir. 2017) (holding that the plaintiff's minimal resistance by pulling his arm away from officer did not justify knocking plaintiff to the ground face-first); *Shannon v. Koehler*, 616 F.3d 855, 858-63 (8th Cir. 2010) (holding that despite the plaintiff being drunk, combative, shouting profanity at the officer, demanding the officer leave, and coming within arms-length of the officer, the officer's takedown was excessive force because the plaintiff had not committed a serious crime, was not attempting to flee or actively resisting arrest, and posed little or no threat to the officer or others); *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) (finding officers' takedown excessive where, despite plaintiff having pulled free from the officer's grasp and refusing to kneel down so the officer could handcuff him, the plaintiff's crime was not serious and he posed no serious threat to the officers or others).

Accordingly, the district court did not err in concluding that the law was clearly established that Defendant Klamser's conduct, viewing the facts and inferences therefrom in the light most favorable to Ms. Surat, constituted a Fourth Amendment violation.

## CONCLUSION

For the reasons stated above, this Court should affirm the district court's denial of summary judgment and qualified immunity to Defendant Klamser.

KILLMER, LANE & NEWMAN, LLP

*s/ Catherine E. Ordoñez*
David A. Lane
Andy McNulty
Catherine E. Ordoñez
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
cordonez@kln-law.com

*Counsel for Plaintiff-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee agrees with Defendant-Appellant that oral argument would assist the Court in resolving the issue on appeal.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9859 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: February 22, 2022

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*
David A. Lane
Andrew McNulty
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dlane@kln-law.com
amcnulty@kln-law.com
*Counsel for Plaintiff-Appellee*

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) All required privacy redactions have been made;

(2) If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, WebRoot Secure Anywhere for Windows, updated February 22, 2022 and according to the program are free of viruses.

KILLMER, LANE & NEWMAN, LLP

*s/ Jamie Akard*
Paralegal

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this **RESPONSE BRIEF OF PLAINTIFF-APPELLEE** was served on February 22, 2022, via CM/ECF to the following:

Mark Ratner
Brenden Desmond
Hall & Evans, LLC
1001 Seventeenth Street, Ste 300
Denver, CO 80202
303-628-3492
ratnerm@hallevans.com
desmondb@hallevans.com

John R. Duval, Esq.
Deputy City Attorney
City of Fort Collins
P.O. Box 580
Fort Collins, CO 80522
(970) 221-6520
jduval@fcgov.com
*Counsel for Defendant-Appellant*

*s/ Jamie Akard*
Paralegal